# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TROY ANTHONY SMOCKS, § § § *Plaintiff,* § § v. § § PRESTON HEIGHTS APARTMENTS, § and PRESTON HEIGHTS § APARTMENTS, LLC, § § *Defendants.* § | § § § § § § Civil Action No. 4:22-CV-787 § Judge Mazzant § § § § § § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Preston Heights Apartments and Preston Heights Apartments, LLC's Motion for Summary Judgment (Dkt. #50). Having reviewed the motion, the briefing, and the relevant law, the Court finds that Preston Heights Apartments and Preston Heights Apartments, LLC's Motion for Summary Judgment (Dkt. #50) should be **GRANTED**.

## BACKGROUND

This case arises out of the events that occurred on January 6, 2021, at the United States Capitol and the arrests that have since taken place. Plaintiff Troy Anthony Smocks ("Smocks") was arrested by the Federal Bureau of Investigation and Department of Homeland Security Joint Terrorism Task Force ("JTTF") for posting threatening messages on social media in violation of 18 U.S.C. § 875(c). In the messages, Smocks threatened to injure law enforcement officers and other persons. Smocks sued Defendants Preston Heights Apartments and Preston Heights Apartments, LLC (collectively, "Preston Heights"), the owners of his apartment complex, alleging that Preston Heights "aided, abetted, and or assisted in the unlawful actions" of the JTTF

when the JTTF arrested him (*see* Dkt. #57 at p. 3). Specifically, Smocks alleges that the federal agents who arrested him "act[ed] unlawfully and absent the titles and authority vested specifically to Texas Peace Officers, i.e., sworn police officers, and in violation of Texas statutory law . . ." (*see* Dkt. #57 at p.p. 3–4). Smocks was prosecuted for his actions in the U.S. District Court for the District of Columbia, and during that process he signed a stipulation of fact detailing the offense.

According to Smocks's guilty plea stipulation, on January 6, 2021, while in Washington, D.C., Smocks posted the following message on social media:

> Today, January 6, 2021, we Patriots by the millions, have arrived in Washington, D.C., carrying banners of support for the greatest President the world has ever known.
>
> Bit [sic] if we must . . . Many of us will return on January 19, 2021, carrying Our weapons, in support of Our nation's resolve, towhich [sic] the world will never *forget*!!!
>
> We will come in numbers that no standing army or police agency can match. However, the police are NOT Our enemy, unless they choose to be!
>
> All who will not stand with the American Patriots . . . or who cannot stand with Us . . . then, that would be a good time for YOU to take a few vacation days.
>
> The American Patriot

(Dkt. #50, Exhibit 2 at pp. 3–4). That same day, Smocks posted another message with the following language:

> Today Eric Trump said that he would physically fight with the Patriots to save Our country. Today Representative Mo Brooks asked the Patriots to pledge Our live [sic] and wealth to fight for Our country. And today President Trump told of to "fight like hell". He said that Our cause was a matter of national security, and that these people behind the massive fraud must be arrested and brought to justice. And that task, falls on the shoulders of We The People . . . the American Patriots.
>
> So over the next 24 hours, I would say, lets get our personal affairs in order. Prepare Our Weapons, and then go hunting. Lets hunt these cowards down like the Traitors that each of them are. This includes, RINOS, Dems, and Tech Execs.

2

> We now have the green light. [All] who resist Us, are enemies of Our Constitution, and must be treated as such.
>
> Today, the cowards ran as We took the Capital. They have it back now, only because We Left. It wasn't the building that We wanted . . . it was *them*!

(Dkt. #50, Exhibit 2 at pp. 4–5). Smocks further stipulated that he sent these messages on social media "for the purpose of issuing threats, and with knowledge that his communications would be viewed as threats" (Dkt. #50, Exhibit 2 at p. 5).

According to FBI Special Agent Kendrick Chumak, the FBI received numerous tips about the messages from concerned citizens around the country (*see* Dkt. #50, Exhibit 5 at p. 3). After discovering that the social media account belonged to Smocks and verifying where he lived, the FBI contacted Preston Heights' leasing office (*see* Dkt. #50, Exhibit 5 at p. 7). Preston Heights provided the FBI with Smocks's apartment lease application, a photocopy of a pilot certificate that falsely indicated Smocks was a commercial pilot, and a NetJets ID card that falsely indicated Smocks was a NetJets employee (*see* Dkt. #50, Exhibit 5 at p. 7). On January 15, 2021, federal law enforcement arrested Smocks pursuant to an arrest warrant and recovered multiple personal belongings pursuant to a search warrant (*see* Dkt. #50, Exhibit 5 at pp. 7–8).

On May 23, 2023, Preston Heights filed the pending motion arguing it is entitled to summary judgment on all Smocks's claims. On May 31, 2023, Smocks filed a response in opposition (Dkt. #51). On June 7, 2023, Preston Heights filed a reply (Dkt. #52).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather,

the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence."

## ANALYSIS

### A. Wrongful Eviction

Preston Heights first argues that it is entitled to summary judgment on Smocks's wrongful eviction claim. The elements of a wrongful eviction claim include: "(1) the existence of an unexpired lease; (2) the tenant's occupancy of the premises; (3) the landlord's eviction of the tenant; and (4) damages suffered by the tenant attributable to the eviction." *St. Anthony's Minor Emergency Ctr., L.L.C. v. Ross Nicholson 2000 Separate Prop. Tr.*, 567 S.W.3d 792, 797 n.4 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citations omitted).

Smocks's wrongful eviction claim fails as a matter of law because there is no evidence that Smocks was evicted. Instead, the evidence shows that Smocks voluntarily vacated his apartment after Preston Heights posted a notice to vacate on the inside of his apartment's main entry door (*see* Dkt. #50, Exhibit 9 at pp. 9–11). After Smocks vacated the apartment, Preston Heights then requested that the justice court cancel the impending eviction proceedings (*see* Dkt. #50, Exhibit 9 at pp. 11–12). Because an eviction never occurred, Smocks cannot prove the third element of his claim.

Neither does the evidence show that a constructive eviction occurred. The Court's explanation in *Houston v. DTN Operating Co., LLC*, No. 4:17-CV-00035, 2017 WL 4653246 (E.D. Tex. Oct. 17, 2017) (Mazzant, J.), is instructive:

> Constructive eviction requires: "(1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premise; and (4) the tenant abandons the premises within reasonable time after the commission of the act." *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ.)
>
> ***
>
> However, notice of eviction followed by vacating the premises does not qualify as abandonment for a claim of constructive eviction. *Lowe v. UHF Magnolia Trace LP*, No. 3:14-CV-1460-M, 2015 WL 9690254, at *4 (N.D. Tex. Dec. 10, 2015); *Quitta v. Fossati*, 808 S.W.2d 636, 643 (Tex. App.—Corpus Christi 1991, writ denied) ("[O]ur courts have repeatedly held that a mere notice to quit, followed by vacation of the premises by the tenant, does not constitute a constructive eviction, for there must be some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession and occurring on the property; and, that if the tenant moves without protest, there is no eviction.").

*Houston*, 2017 WL 4653246, at *9. Here, Smocks voluntarily vacated the apartment, evidently without protest or a harassing incident. He did not abandon the property because of a substantially interfering act by Preston Heights. He left following a notice to vacate. Therefore, Smocks's wrongful eviction claim fails on these grounds as well.

### B. Invasion of Privacy

Preston Heights next argues that it is entitled to summary judgment on Smocks's invasion of privacy claim. Under Texas law, an invasion of privacy claim requires proof of the following elements: (1) an intentional intrusion; (2) upon the seclusion, solitude, or private affairs of another; (3) that would be highly offensive to a reasonable person; and (4) that the intrusion be

6

unreasonable, unjustified, or unwarranted. *Morrison v. Weyerhaeuser Co.*, 119 F. App'x 581, 588 (5th Cir. 2004) (citations omitted).

Smocks's invasion of privacy claim fails as a matter of law on multiple grounds. First, there is no evidence that Preston Heights caused an intentional intrusion into the private affairs of Smocks. Instead, the evidence shows that federal law enforcement, pursuant to arrest and search warrants, caused the intrusion by arresting Smocks at his apartment and by confiscating his personal property (*see* Dkt. #50, Exhibit 5 at pp. 7–8; Exhibits 6–8). Preston Heights played no part in the execution of these warrants.

In addition, the release of Smocks's personal information to law enforcement did not constitute an act of intrusion. "Texas courts have held that 'intrusion upon private affairs' typically requires either a trespass or an attempt to discover or perceive private information." *Joshua Amin v. UPS*, 66 F.4th 568, 577 (5th Cir. 2023) (citing *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, pet. denied) ("The invasion-of-privacy tort is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.")). There is no evidence that Preston Heights itself trespassed or attempted to discover private information. Preston Heights merely disclosed Smocks's apartment rental application upon contact by law enforcement. An act of intrusion, however, requires more than the disclosure of information to a third party. *See Aldridge v. Sec'y, Dep't of the Air Force*, No. CIV.7:05CV00056-R, 2005 WL 2738327, at *3 (N.D. Tex. Oct. 24, 2005) (citations omitted) ("Although past [Texas] cases show that an intrusion need not be physical . . . disclosure of information to a third party does not qualify as an act of intrusion in and of itself.").

7

Further, no reasonable person could find that the disclosure of Smocks's personal information was offensive in this context. In his apartment lease contract, Smocks agreed to allow Preston Heights to share with law enforcement information related to the lease. The lease unambiguously states that "[Defendants] may, but are not obligated to, share and use information related to this lease for law-enforcement, governmental, or business purposes" (Dkt. #50, Exhibit 9 at p. 18). Such language casts a wide net and heavily implies that Smocks's personal information, in both the rental application and lease, was fair game for release. Despite the lawfulness of the arrest or underlying warrants, no evidence suggests that Preston Heights unreasonably relied on representations from federal agents when it disclosed Smocks's personal information. Accordingly, as a matter of law, the Court finds that the disclosure was not unreasonable, unjustified, or unwarranted. *See id.* at *4 (finding the Air Force's disclosure of medical records for the purpose of investigation and litigation not offensive or unreasonable).

Even if asserted on public disclosure grounds, Smocks's invasion of privacy claim still fails. Such a claim requires proof that: (1) the publicized information "contains highly intimate or embarrassing facts about a person's private affairs, such that its publication would be highly objectionable to a person of ordinary sensibilities"; (2) such information was "communicated to the public at large," rather than "a small group of persons"; and (3) "that the information publicized not be of legitimate concern to the public." *Johnson v. Sawyer*, 47 F.3d 716, 731 (5th Cir. 1995). The biographical information contained in Smocks's rental application is not highly intimate or embarrassing. On the contrary, the information relates to Smocks's purported work history and to other ordinary topics that one would typically encounter when applying to rent an apartment. Additionally, the evidence suggests that Preston Heights, rather than sharing such information

8

with the general public, only provided the information to a limited number of federal agents.[1] Because there is no genuine issue of material fact, Smocks's invasion of privacy claim fails as a matter of law.

### C. Intentional Infliction of Emotional Distress

Smocks's claim for intentional infliction of emotional distress also fails as a matter of law. This claim requires proof that "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017).

As Preston Heights notes, there is no evidence in the record that supports Smocks's alleged version of the events.[2] Smocks alleges that "[f]or more than 20 minutes following the assault, [Smocks] was forced at gunpoint, but at all times, while being restrained from behind, to stand publicly in the middle of his residential street, completely naked except for his boxer style underwear, and against a thirty four degree near freezing January temperature" (Dkt. #57 at pp. 8–9). He further alleges that federal law enforcement ignited flash bang grenades to "awaken [Smocks'] still sleeping neighbors in [an effort] to further humiliate and embarrass [Smocks]" (Dkt. #57 at p. 9). Allegations alone, however, are "insufficient at summary judgment because 'pleadings are not summary judgment evidence.'" *La. State v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("Once a summary judgment motion is made and properly supported, the nonmovant must

---

[1] The Court notes that FBI Special Agent Kendrick Chumak's testimony from Smocks' criminal detention hearing does not identify exactly how many federal agents to whom Preston Heights provided a copy of Smocks' apartment rental application (*see* Dkt. #50, Exhibit 5 at p. 7). There is no evidence, however, that allows the Court to reasonably infer that Preston Heights gave such information to anyone beyond law enforcement.
[2] The record contains no affidavits signed by Smocks, nor is the First Amended Civil Complaint (Dkt. #57) verified.

go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.")). The evidence provides details on the criminal investigation leading to Smocks's arrest, as well as Smocks's subsequent prosecution, but the evidence does not shed any light on what happened during the arrest itself (*see* Dkt. #50, Exhibit 5 at pp. 7–8).

Even assuming the allegations were true, Smocks's emotional distress claim would still fail. Preston Heights did not toss the grenades or make the arrest. Federal agents made those decisions. To attribute such conduct to Preston Heights would be wholly unjustified, and not even the allegations themselves suggest that Preston Heights, through its cooperation with law enforcement, intended to cause Smocks severe emotional distress. *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 63 (Tex. 1998) (holding that "intentional infliction of emotional distress is not available as an independent cause of action unless the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct"). Nothing in the record shows that Preston Heights sought to humiliate or degrade Smocks. The absence of such evidence is fatal to Smocks's emotional distress claim.

### D. Rule 56(f) Notice on Smocks's Negligence Claim

Though Preston Heights did not expressly move for summary judgment on Smocks's negligence claim, the Court hereby gives notice of its intent to grant summary judgment on Smocks's negligence claim in favor of Preston Heights on grounds not raised by Preston Heights.

A court may grant summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond. FED. R. CIV. P. 56(f). "The district court may enter summary judgment sua sponte if the parties are provided with reasonable notice and an opportunity to

present argument opposing the judgment . . . A party must be given at least ten days notice . . . ." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000) (citations omitted).

Negligence requires proof of the following elements: "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Itt Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 154 (Tex. App.—El Paso 1996, writ denied). As the Court previously noted in the record (*see* Dkt. #56 at p. 7 n.3), "[w]here an individual is implicated in a crime, subsequently exonerated, and then brings a claim for damages caused by the disclosure of information to the police and the criminal prosecution, such a complaint is in essence a claim for malicious prosecution." *See Smith v. Sneed*, 938 S.W.2d 181, 183 (Tex. App.—Austin 1997, no writ). Further, "a plaintiff cannot avoid the strict elements of a malicious prosecution action by labeling it negligence." *See Itt Consumer Fin. Corp.*, 932 S.W.2d at 155–56.

The Court finds that the evidence, as it currently stands, shows that Preston Heights owed no legal duty to Smocks. *See id.* at 156–58. Rather, the evidence shows that Preston Heights cooperated with law enforcement by disclosing information. Therefore, Smocks's negligence claim currently fails as a matter of law, and the Court need not address the lawfulness of the underlying federal investigation or Smocks's arrest. Pursuant to Rule 56(f), the Court orders Smocks to file a response within fourteen days from the date of this Order. The response shall detail any reason why the Court should not grant summary judgment on Smocks's negligence claim.

## CONCLUSION

It is therefore **ORDERED** that Preston Heights Apartments and Preston Heights Apartments, LLC's Motion for Summary Judgment (Dkt. #50) is hereby **GRANTED**. Smocks's

claims for wrongful eviction, invasion of privacy, and intentional infliction of emotional distress are hereby dismissed **WITH PREJUDICE**.

It is further **ORDERED** that, as to Smocks's negligence claim, any response to the Court's Rule 56(f) notice is due within fourteen days from the date of this Order. Smocks's failure to respond or to show a genuine issue of material fact will result in the entry of summary judgment on the negligence claim.

It is further **ORDERED** that the jury trial in this case is canceled pending the Court's summary judgment determination on Smocks's negligence claim.

**IT IS SO ORDERED**.

SIGNED this 3rd day of January, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE